IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dion Orlando Taylor, ) | C/A No. 0:10-2327-HMH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Sgt. Michael Lang; Major Eichelberger; ) | |
| Warden Levern Cohen; Lt. S. Lowery; M.E. ) | |
| Montouth, *Grievance Coordinator*; all in their ) | |
| individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, Dion Orlando Taylor ("Taylor"), a self-represented state prisoner, filed this civil rights matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Taylor of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 29.) Taylor filed a response in opposition to the defendants' motion (ECF No. 42) and the defendants replied (ECF No. 44). Also pending before the court are motions filed by Taylor. (ECF Nos. 35, 40, & 51.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion for summary judgment should be granted and Taylor's motions should be denied.

**BACKGROUND**

The incidents that are the subject of Taylor's Complaint occurred when he was incarcerated at Ridgeland Correctional Institution ("Ridgeland"). Taylor contends that while waiting in line to receive his medication, he was verbally harassed by Defendant Lang. Lang ordered Taylor to go with him to the Operations building where he then questioned Taylor and gave Taylor the directive to go to a holding cell. Taylor alleges that, even though had been and continued to be compliant with all of Lang's instructions, when Lang next commanded Taylor to "stop, turn around & come back towards [Lang]," Lang sprayed Taylor with chemical munitions. (Compl., ECF No. 1 at 3.) Taylor was ordered to lie on the ground where he was then handcuffed and put in the holding cell. Taylor alleges that he was left handcuffed and with chemical munitions in his eyes for approximately forty-five minutes to an hour. After that time, Defendant Lowery allowed Taylor to shower and then returned him to the holding cell where Taylor alleges he was kept for three days with no mattress, blanket, or hygiene items. Taylor further contends that Defendant Eichelberger, as the person who signed the incident report and as the officer on duty, had knowledge of these events but failed to act. Taylor also states that he wrote to the warden, Defendant Cohen, about these events but that Defendant Cohen did not respond. Taylor also filed a grievance, but Defendant Montouth, the grievance coordinator, returned his grievance unprocessed as duplicative to a prior grievance.

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing



to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).



B.       **Defendants' Motion for Summary Judgment**

The defendants have moved for summary judgment arguing that Taylor's claims fail as a matter of law and that they are entitled to qualified immunity to the extent that they are sued in their individual capacities.[1] Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818, 821.

For the reasons that follow, the court finds that no reasonable jury could find that the defendants' conduct has violated any of Taylor's constitutional rights. As a result, the defendants are also entitled to qualified immunity.

---

[1] Generally, a properly supported motion for summary judgment will demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the court observes that the defendants' motion for summary judgment contains very little, if any, discussion of the current law applicable to the plaintiff's claims or application of the law to the facts in this case. However, notwithstanding the defendants' scant memorandum in support of their motion for summary judgment, the court finds for the reasons that follow that they are entitled to judgment as a matter of law.



1.  **Eighth Amendment Claims**

    a.  **Excessive Force**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, " '[w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).

When analyzing excessive force claims, courts should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley v. Albers, 475 U.S. 312, 321 (1986). Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there



is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  Id.  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has specifically addressed the use of chemical munitions in a prison setting.  In Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984), the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Id. at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotations marks & citation omitted).

According to Defendant Lang, the incident on June 11, 2010 began when Lang overheard Taylor being disrespectful to the nurse distributing medication. (Lang Aff. ¶ 6, ECF No. 27-3 at 2.) When told by Lang that disrespecting prison staff would not be tolerated, Taylor stated "you don't know who you're talking to," and began to walk away while continuing to use profane language. (Id. at ¶¶ 7-8, ECF No. 27-3 at 2.)  Lang states that he directed Taylor to a holding cell in the B-

Building, but that Taylor became increasingly loud and aggressive and had to be given directives repeatedly before he complied. (Id. at ¶¶ 9-10, ECF No. 27-3 at 2.) Lang avers that, as Taylor walked toward the holding cell, he continued to make aggressive comments, then stopped, clenched his fists, and turned toward Lang. (Id. at ¶¶ 11-12, ECF No. 27-3 at 2.) Lang states that he felt threatened by Taylor's aggressive behavior and "administered a short burst of chemical munitions towards [Taylor's] face in order to subdue [Taylor] and force compliance with [Lang's] directives." (Id. at ¶¶ 13-14, ECF No. 27-3 at 2.) Lang states that he then ordered Taylor to the ground, handcuffed him, and placed him in the holding cell. (Id. at 15, ECF No. 27-2 at 2.)

Taylor disputes certain aspects of Lang's version of events. Although he does not dispute that he was disrespectful to the nurse, he contends that he expressed his displeasure in a "non-profane manner." (Taylor Decl., ECF No. 42-1 at 2.) He acknowledges that a verbal exchange occurred between him and Lang, but states that he complied with Lang's directives to go to the holding cell. (Id.) Taylor also declares that Lang then gave him a directive to "stop, turn around, & come back towards [Lang]," and that when Taylor did so, Lang sprayed him with chemical munitions. (Id.) Taylor disputes that he was a threat and asserts that Lang acted with malicious intent. (Id.)

Applying the Whitley factors to the facts viewed in the light most favorable to Taylor, it appears that the amount of force used was not constitutionally excessive. While Taylor generally disputes that he was a threat, it is undisputed that Taylor was disrespectful to the nurse, that Defendant Lang and Taylor engaged in a verbal exchange shortly before the chemical munitions were deployed, and that Taylor turned to face Lang with clenched fists. Further, Taylor has failed to allege or produce any evidence showing any discernible injury from Defendant Lang's use of



chemical munitions.  Accordingly, even viewing the facts that are disputed in the light most favorable to Taylor, no reasonable jury could find that Defendant Lang's perception that Taylor was a threat was unreasonable.  See Whitley, 475 U.S. at 321.  Finally, the court observes that no further disciplinary action was taken and Taylor was provided a shower.  Accordingly, the court concludes that no reasonable jury could find that Lang's use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 130 S. Ct. at 1178; see also Bailey, 736 F.2d 963, 969-70; Benjamin, 77 F.3d at 763.  Therefore, the defendants' motion for summary judgment must be granted regarding Taylor's excessive force claim.

To the extent that Taylor is asserting a claim based on his allegation that he was denied a shower for approximately forty-five minutes to an hour after the mace was deployed, Taylor has failed to demonstrate or even allege sufficient facts that any defendant was deliberately and intentionally indifferent to a serious medical need.  See Estelle v. Gamble, 429 U.S. 97, 104-106 (1976); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (defining a serious medical need).  The record presented shows that, after the mace was deployed, Taylor was handcuffed and taken to a holding cell.  Taylor states in his Complaint that Defendant Lowery came into his holding cell, Taylor told him "what Sgt. Lang did to [him]," and that shortly thereafter, Lowery allowed him to shower and returned him to the holding cell.  (Compl., ECF No. 1 at 3.)  Taylor does not allege, nor does the record show, that Taylor requested and was denied a shower.  Accordingly, any claim that the defendants were deliberately indifferent to Taylor's medical needs must fail.

### b. Conditions of Confinement

Taylor also alleges that his constitutional rights were denied when he was placed in a holding cell following the macing incident with Defendant Lang. Taylor alleges that he was kept in the holding cell for three days with no mattress, blanket, or hygiene items. "The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The cell conditions of which Taylor complains occurred during a three-day period following the incident with Defendant Lang. The defendants state that Taylor was housed in a holding cell—which Taylor describes as a "suicide cell" in that these cells are devoid of items with which an inmate may harm himself—because the Special Management Unit cells were all occupied. (See Defs' Mem. Supp. Summ. J., ECF No. 27-1 at 2; Taylor Decl., ECF No. 42-1 at 1.) The defendants have provided affidavits stating that, pursuant to SCDC and Ridgeland Correctional Institute policy, "inmates placed in holding cells are not provided bed sheets, blankets, or the like . . . ." (Eichelberger Aff. ¶ 6, ECF No. 27-2 at 2; Cohen Aff. ¶ 6, ECF No. 27-4 at 2.) Taylor appears to acknowledge this policy in his declaration, stating that "[t]his was not my first time being in the holding cell for multiple days" and that the policy "appeared to be an on-going practice [at] Ridgeland Corr[ectional] Institution." (Taylor Decl., ECF No. 42-1 at 1.) It appears that after three days, Taylor was transferred to a cell in the SMU. (ECF No. 1-2 at 2.)

In this case, Taylor has not alleged that he suffered a serious or significant physical or mental injury or demonstrated a substantial risk of such serious harm as a result of the cell conditions of which he complains. See De'Lonta, 330 F.3d at 634. His general allegation that "there is a real [and] serious threat of irreparable harm" is insufficient. (Compl., ECF No. 1 at 6.) Moreover, there is no indication that any prison official had actual knowledge of a substantial risk of harm to Taylor by placing him in a cell for three days without a mattress, blanket, or unspecified hygiene items and disregarded that substantial risk. See Farmer, 511 U.S. at 847; (see also Eichelberger Aff. ¶ 6, ECF No. 27-2 at 2) (indicating that "inmates placed in holding cells are not provided bed sheets, blankets, or the like in order to protect the inmates from harming themselves"). Further, the undisputed record



shows that Taylor was placed in a cell under those conditions for legitimate, penological reasons.

Finally, to the extent that Taylor's allegation that he was denied a shower for approximately forty-five minutes to an hour after the mace was deployed could be construed as a claim concerning his conditions of confinement, this claim fails for the same reasons discussed above. Specifically, Taylor has failed to demonstrate or even allege sufficient facts that any defendant was deliberately and intentionally indifferent to a basic human need. Further, as stated above, shortly after Taylor informed Defendant Lowery that he had been maced, Lowery allowed him to shower and returned him to the holding cell. (Compl., ECF No. 1 at 3.) Taylor does not allege, nor does the record show, that Taylor requested and was denied a shower. Accordingly, Taylor has failed to demonstrate or allege that he suffered a serious or significant physical or mental injury or that there was a substantial risk of such serious harm as a result of the alleged time that passed between the deployment of the mace and his shower. See De'Lonta, 330 F.3d at 634.

Therefore, viewing the facts in the light most favorable to Taylor, his allegations concerning his conditions of confinement fail to rise to the level of a constitutional violation.

**2.     Defendant Montouth**

Taylor alleges that the grievance coordinator, Defendant Montouth, violated his constitutional rights by returning his grievance to him unprocessed. (Compl., ECF No. 1 at 4.)   Even construed as a claim that Defendant Montouth mishandled his grievance in some manner, prisoners have no constitutional right to a grievance procedure. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Shabazz v. Maynard, No. 0:02-1208-10BD, 2002 WL 32332072 (D.S.C. Nov. 25, 2002) (indicating that "a violation of the SCDC's grievance policy is not a violation of any federal right"). Taylor also appears to argue that Defendant Montouth, by returning his grievance, denied him access to the courts. Taylor has



failed to allege a specific actual injury resulting from the alleged denial. See Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). Moreover, Taylor's numerous filings in his cases with this court belie this assertion. Accordingly, Taylor's claims against Defendant Montouth fail.

### 3. Other Claims

To the extent that Taylor's Complaint may be construed to allege any other constitutional violations, the court finds that Taylor has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).

### C. Other Motions

Also pending before the court are motions filed by Taylor that appear to seek injunctive relief. To the extent that Taylor seeks for this court to direct arrest warrants be issued for several of the defendants in connection with the allegations in his Complaint, such relief is not available. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."). The remainder of the injunctive relief that Taylor seeks is rendered moot based on the court's determination that Taylor's constitutional claims fail as a matter of law. To the extent that Taylor's motions seek to add new claims, they are untimely pursuant to the scheduling order in this case and appear to raise claims unrelated to those currently before the court.

## RECOMMENDATION

Based on the foregoing, the recommends that the defendants' motion for summary judgment (ECF No. 27) be granted and Taylor's pending motions (ECF Nos. 35, 40, & 51) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 7, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).